IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DIAMOND KING,                    §
                                 §
         Plaintiff,              §
                                 §
V.                               §          No. 3:24-cv-903-K-BN
                                 §
ACADEMY OF AMERICA, ET AL.,      §
                                 §
         Defendants.             §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Liberally construing the *pro se* complaint, Plaintiff Diamond King alleges violations of two (or possibly three) federal civil rights statutes that protect individuals with disabilities. *See* Dkt. No. 3.

King also moves for leave to proceed *in forma pauperis* ("IFP"). *See* Dkt. No. 4.

So United States District Judge Ed Kinkeade referred this lawsuit to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference.

The Court will grant King's IFP motion through a separate order, subjecting the complaint to screening under 28 U.S.C. § 1915(e).

And the undersigned enters these findings of fact, conclusions of law, and recommendation that, to the extent and for the reasons set out below, the Court should dismiss the complaint.

**Legal Standards**

Section 1915(e) requires that the Court "dismiss the case at any time" if it "fails

to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). The Court is therefore "statutor[ily] mandate[d] to dismiss a complaint whenever it becomes apparent to the court that no claim for relief is stated." *Harmon v. Nguyen*, No. 3:14-cv-2038-D-BN, 2016 WL 750923, at *5 (N.D. Tex. Feb. 4, 2016) (quoting *Moore-Bey v. Cohn*, 69 F. App'x 784, 787-88 (7th Cir. 2003) (per curiam)), *rec. adopted*, 2016 WL 740381 (N.D. Tex. Feb. 25, 2016).

"The language of § 1915(e)(2)(B)(ii) tracks the language of Federal Rule of Civil Procedure 12(b)(6)." *Black v. Warren*, 134 F.3d 732, 733-34 (5th Cir. 1998) (per curiam). Accordingly, the pleading requirements set out in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), apply to the Court's screening of a complaint filed IFP.

Considering these standards, Federal Rule of Civil Procedure 8(a)(2) does not require that a complaint contain detailed factual allegations, just "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. So, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up; quoting *Twombly*, 550 U.S. at 557).

On the other hand, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

And, while a court must accept a plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

In fact, "the court does not 'presume true a number of categories of statements, including,'" in addition to legal conclusions, "'mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021)).

And so, to avoid dismissal, plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679)).

## Analysis

King first alleges that the school where her sons attend(ed) failed to comply with its Child Find obligation by not timely identifying at least one son for special

education services. *See* Dkt. No. 3 at 2-3. King then alleges that the school and associated individuals retaliated against her after she complained. *See id.* at 3-5. And, based on her allegations, King seeks $14 million in damages "for past, present, and future damages that defendant(s) may have caused, by not giving plaintiffs the proper education." *Id.* at 5.

King does not name either son as a plaintiff. But the first claim may be construed as belonging, at least in part, to the son who was allegedly not timely identified for special education.

Regardless, the Court need not, at this time, become entangled in the potential thicket of whether King can "establish that under [28 U.S.C.] § 1654, federal or state law authorizes her to proceed *pro se* on behalf of her children," "[s]ince dismissal of a patently frivolous claim does not require a response from a *pro se* parent, [so] a district court can dismiss a claim alleged by such a parent without considering whether the parent is qualified to bring the suit in the first place." *Raskin ex rel. J.D. v. Dall. Indep. Sch. Dist.*, 69 F.4th 280, 287 (5th Cir. 2023) (noting that, "[u]nder those circumstances, dismissal of the claim should ordinarily be without prejudice").

The Court should therefore start with the federal statutory framework in place to protect students with disabilities, as applied to the facts alleged here and through recent decisions from the United States Supreme Court and the United States Court of Appeals for the Fifth Circuit.

The Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.*, ("IDEA")

offers federal funds to the states in exchange for providing a "free appropriate public education" ("FAPE") to all children with certain physical or intellectual disabilities. "An eligible child ... acquires a 'substantive right' to such an education once a State accepts IDEA's financial assistance." The primary vehicle for delivery of the benefits of the promised FAPE is an "individualized education program" ("IEP"). An IEP is a personalized plan detailing the "special education and related services" necessary for the child to meet their educational goals. Developed by the collaborative efforts of parents and school, it strikes at the difficulties faced by children with disabilities in a school setting.

*Lartigue v. Northside Indep. Sch. Dist.*, ___ F.4th ____, No. 22-50854, 2024 WL 1261291, at *1 (5th Cir. Mar. 26, 2024) (footnotes omitted).

To identify eligible children under "the IDEA's child find requirement, a state receiving federal funds must maintain policies and procedures to ensure, among other things, that '[a]ll children with disabilities ... who are in need of special education and related services, are identified, located, and evaluated." *Spring Branch Indep. Sch. Dist. v. O.W. by Hannah W.*, 961 F.3d 781, 790 (5th Cir. 2020) (quoting 20 U.S.C. § 1412(a)(3)).

And, "[w]hile the statute's implementing regulations define 'how quickly a school district must act after consent for an evaluation is received, neither the statute nor regulations seek to set a time between notice of a qualifying disability and referring the student for an evaluation." *Id.* at 790-91 (cleaned up; quoting *Dall. Indep. Sch. Dist. v. Woody*, 865 F.3d 303, 319 (5th Cir. 2017)).

But the Fifth Circuit "has inferred a 'reasonable-time standard' into the provision" and has held that "a school district must 'identify, locate, and evaluate students with suspected disabilities within a reasonable time after the school district is on notice of facts or behavior likely to indicate a disability." *Id.* (quoting *Woody*,

865 F.3d at 320; *Krawietz ex rel. Parker v. Galveston Indep. Sch. Dist.*, 900 F.3d 673, 676 (5th Cir. 2018)).

"[T]he IDEA's remedy is compensatory education, not compensatory damages," while Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*, ("ADA") "protects the rights of all individuals with disabilities, banning discrimination by public entities, including schools." *Lartigue*, 2024 WL 1261291, at *1 (footnotes omitted); *see also Access Living of Metro. Chi. v. Uber Techs., Inc.*, 958 F.3d 604, 607 (7th Cir. 2020) (The ADA "prohibits discrimination based on disability in 'major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III).'" (quoting *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001))).

"Unlike the IDEA, the ADA authorizes 'individuals to seek redress for violations of their substantive guarantees by bringing suits for injunctive relief or money damages.'" *Lartigue*, 2024 WL 1261291, at *1 (quoting *Luna Perez v. Sturgis Pub. Sch.*, 598 U.S. 142, 149-50 (2023)).

And, insofar as King may assert claims under both Title II of the ADA and under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*,

> "[t]he language in the ADA generally tracks the language set forth in [§ 504]." And the ADA expressly provides that "[t]he remedies, procedures, and rights" available under the Rehabilitation Act are also accessible under the ADA. Thus, [courts in this circuit] "equate[ ] liability standards under § 504 [of the Rehabilitation Act] and the ADA."

*J.W. v. Paley*, 81 F.4th 440, 449 (5th Cir. 2023) (further observing that "[t]he only material difference between [§ 504 and Title II of the ADA] lies in their respective causation requirements,'" while "[s]ection 504 requires that the plaintiff's disability

be the 'sole reason' for the exclusion or denial of benefits, [ ]  the ADA's standard is less stringent"; footnotes omitted)).

"In short, the IDEA guarantees individually tailored educational services, while Title II and § 504 promise non-discriminatory access to public institutions." *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 171-72 (2017).

But "[t]he same conduct might violate all three statutes." *Id.* at 172. So "a complaint brought under Title II and § 504 might instead seek relief for simple discrimination, irrespective of the IDEA's FAPE obligation." *Id.*

The Court should start applying this framework to King's complaint by dismissing the claims against the individual defendants. *See, e.g.*, *D.A. v. Hous. Indep. Sch. Dist.*, 716 F. Supp. 2d 603, 611 (S.D. Tex. 2009) (As to claims against defendants "in their individual capacities for violations of the IDEA, Section 504, the ADA or the Age Discrimination Act," "[i]t is well-established that these statutes are meant to prevent discrimination by public agencies, not officials acting in their individual capacities." (citations omitted)); *cf. Harmon v. Dall. Cnty., Tex.*, 927 F.3d 884, 891 (5th Cir. 2019) (Where "'a defendant government official is sued in his individual and official capacity, and the city or state is also sued,' the 'official-capacity claims and the claims against the governmental entity essentially merge.'" (quoting *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.,* 229 F.3d 478, 485 (5th Cir. 2000))).

As against the school, then, King (and/or King on behalf of her son(s)) seeks only monetary damages, so any claim under the IDEA need not be exhausted, but

any such claim should also be dismissed:

> [T]he current state of the law is that in a suit against a public school for alleged violations of the ADA or similar anti-discrimination statutes, the court should first assess whether the gravamen of the complaint is the denial of a FAPE or disability discrimination. If the complaint is not the denial of a FAPE, the plaintiff need not clear the IDEA's administrative hurdles. On the other hand, if the complaint is predicated on a FAPE denial, the question turns to the relief sought. And if the relief sought is not one that the IDEA can provide, such as compensatory damages, the plaintiff need not exhaust the IDEA's administrative hurdles. But if the relief sought is offered by the IDEA, a plaintiff must fully exhaust the administrative processes as required by [20 U.S.C.] § 1415(*l*).

*Lartigue*, 2024 WL 1261291, at *3 (footnotes omitted).

Put another way, if, through her complaint, King had sought relief other than compensatory damages, the Court would need to consider whether that relief is offered under the IDEA and, if so, consider whether the claim was exhausted. But, because damages are the sole relief sought, there is no plausible IDEA claim, and the Court need only consider whether the complaint sets out a plausible claim based on alleged violations of Title II of the ADA (or Section 504).

> To establish a prima facie case [of discrimination] under either statute, a plaintiff must show:
> (1) that he is a qualified individual ... ; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability.

*J.W.*, 81 F.3d at 449 (quoting *T.O. v. Fort Bend Indep. Sch. Dist.*, 2 F.4th 407, 417 (5th Cir. 2021) (quoting, in turn, *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004))).

In addition to having virtually identical requirements for bringing suit, the Rehabilitation Act expressly incorporates the anti-

retaliation provision of Section 503 of the ADA. 29 U.S.C. § 794(d); 42 U.S.C. § 12203. Thus, both statutes prohibit retaliation against any individual because he or she opposes any act or practice made unlawful by the acts. *Id.* The scope of the protection afforded by this act extends to those who advocate on behalf of the disabled, including parents and teachers. In addition, a plaintiff may maintain a retaliation claim, regardless of whether their underlying case is successful.

*Smith ex rel. C.R.S. v. Tangipahoa Par. Sch. Bd.*, Civ. A. No. 05-6648, 2006 WL 3395938, at *6 (E.D. La. Nov. 22, 2006) (citations omitted).

And the prima facie elements of a retaliation claim under either statute are: "(1) that the plaintiff engaged in protected activity, (2) that an adverse action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Id.* at *13 (citations omitted).

"But more is required when (as here) a plaintiff seeks compensatory damages rather than injunctive relief." *Lamar Consol. Indep. Sch. Dist. V. J.T. b/n/f April S.*, No. 4:20-cv-02353, 2023 WL 2652261, at *4 (S.D. Tex. Mar. 24, 2023).

In such a case, a plaintiff must ultimately "prove that the defendant intentionally discriminated against him." *Id.* (citing *Cadena v. El Paso Cnty.*, 946 F.3d 717, 724 (5th Cir. 2020)); *see also Delano-Pyle v Victoria Cnty.*, 302 F.3d 567, 574 (5th Cir 2002) ("A plaintiff asserting a private cause of action for violations of the ADA or the RA may only recover compensatory damages upon a showing of intentional discrimination." (citing *Carter v. Orleans Par. Pub. Sch.*, 725 F.2d 261, 264 (5th Cir. 1984) (per curiam))).

And, while a plaintiff need not establish a statutory prima facie case to survive dismissal at the pleadings stage, *see Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019); *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013), a

plaintiff must still "plead sufficient facts on all of the ultimate elements of his claim to make his case plausible," *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (citations omitted).

So a district court may rely on the prima facie elements of a claim "to frame [its] inquiry" at this stage. *Norsworthy v. Hous. Indep. Sch. Dist.*, 70 F.4th 332, 336 (5th Cir. 2023).

And, here, the facts that King sets out against the school that could allege discriminatory conduct – a delay in identifying at least one son for special education services, supported by a timeline but not facts from which the Court could infer an intent to deny services – do not plausibly allege an intentional statutory violation. That is, in context of Child Find, no facts alleged could show that a defendant intentionally failed to identify the son "within a reasonable time after the school district is on notice of facts or behavior likely to indicate a disability." *Krawietz*, 900 F.3d at 676; *see also Carter*, 725 F.2d at 264 (affirming a dismissal for failure to state a claim where "Carter has never alleged that the School Board intended to place his children in inappropriate classes or that his children's placement manifested discriminatory animus" and where "[h]is allegations of class assignments contrary to test results and without parental consent or notification, if true, indicate culpability on the part of school officials; the allegations do not, however, eliminate negligence or inadvertence as sources of error and thereby suffice as allegations of intentional discrimination" (footnote omitted)); *Li v. Revere Local Sch. Dist.*, No. 21-3422, 2023 WL 3302062, at *13 (6th Cir. May 8, 2023) ("Regardless, even if Count 3 did expressly

seek compensatory damages, and was therefore exempt from the IDEA's exhaustion requirements under *Perez*, the Lis fail to explain how the mere failure to timely identify T.L. rises to the level of bad faith or gross misjudgment. 'To prove discrimination in the education context, something more than a mere failure to provide the free appropriate education required by [the IDEA] must be shown.' '[E]ither bad faith or gross misjudgment must be shown before a § 504 violation can be made out.' The Lis fail to allege any action by the District or its Board that can be reasonably construed as an intentional act of bad faith, or any omission rising to the level of gross misjudgment. At most, the complaint alleges that the District negligently failed to timely identify T.L. Such actions do not give rise to an ADA or Section 504 claim and were therefore properly dismissed by the district court." (citations omitted)).

Similarly, to the extent that King asserts a claim of retaliation under either Title II or Section 504, her allegations include that a parent-teacher meeting she was to attend was canceled; that a son "did not receive as much play time for basketball"; that a teacher told one son "that he would slap the smile off his face"; and that one son "was called 'remedial' by a staff member." Dkt. No. 3 at 3-5.

But none of King's allegations, made without much context or elaboration, alone or in combination, amount to an act (or acts) that would "'materially' affect the student as to his or her status or [are] sufficiently severe so as to deter a reasonable individual's advocacy efforts." *Smith*, 2006 WL 3395938, at *13; *see also id.* at *13-*16 (examining insufficiently adverse actions in the context of an education claim at

summary judgment).

In sum, the Court should dismiss the complaint.

But the ability to file objections to this recommendation (as further explained below) allows King an opportunity to cure the deficiencies identified above (if possible) and thus show the Court that this case should not be dismissed with prejudice at this time and that the Court should instead grant leave to amend. *See Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (per curiam) ("A court should freely give leave to amend when justice so requires, but a movant must give the court at least some notice of what his or her amendments would be and how those amendments would cure the initial complaint's defects. If the plaintiff does not provide a copy of the amended complaint nor explain how the defects could be cured, a district court may deny leave." (citations omitted)).

## Recommendation

Unless Plaintiff Diamond King satisfactorily shows through timely objections a basis to amend the complaint to allege a plausible claim, the Court should dismiss this lawsuit – with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim on which relief may be granted as to King and without prejudice to the extent that she also asserts claims on behalf of her minor son(s).

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ.

P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: May 6, 2024

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE